[See Case No. 15,766.]

## Case No. 15,766.

### UNITED STATES v. MILBURN.

[4 Cranch, C. C. 552.] [1]

Circuit Court, District of Columbia. March Term, 1835.

COURTS—SPECIAL SESSION—PENDING CAUSES.

1. When a special session of the court is ordered for the trial of criminal causes the criminal causes pending in the preceding regular term cannot be continued to the special session, nor can any order be made therein at such special session.

2. Quaere? whether a new capias ad respondendum, for a misdemeanor, can be issued, while the party is in custody of his bail upon a former capias for the same offence, he having failed to appear according to the tenor of the recognizance of bail?

At a special session of the circuit court of the District of Columbia, for the trial of criminal causes, held on the first Monday of September, 1833, by an order of the court made at the preceding regular March term, Mr. Key, Dist. Atty., moved the court to order a new capias ad respondendum against the defendant, George Milburn, upon the presentment found at November term, 1834, for keeping a certain gaming-table called a "faro-bank," upon which a capias ad respondendum, returnable immediately at that term, was returned non est. [See Case No. 15,765.] A new capias was issued, returna-

ble to March term, and was returned, "cepi recognizance." The recognizance was forfeited, and writs of scire facias were issued against Milburn and his sureties returnable to the next regular term of the court, namely, November term, 1833, (being the then next November term,) a new capias was issued upon the same indictment, returnable to this special session, upon which Milburn was taken and discharged on habeas corpus by CRANCH, Chief Judge, because he had been arrested before, and given bail upon the same indictment. See Watkin's Case [Case No. 17,269], at the last term, and the opinion of the court.

THE COURT ordered the question upon Mr. Key's motion to be argued on the 23d instant (that is, 23d September, 1833); CRANCH, Chief Judge, contra; being of opinion that the court, at this special session, has no jurisdiction of the prosecution against Milburn pending at a preceding regular term.

Mr. Key. By the act of March 2, 1793 (1 Stat. 333), a special session is, in effect, only an adjournment of the criminal business. It is still a circuit court, having all the criminal jurisdiction of a regular stated session. All process, &c. is to be returned to the special session. It is not process until an indictment or a presentment is found.

(CRANCH, Chief Judge. That act does not apply to this court, it applies only to courts called by the supreme court, or by a judge of the supreme court and the district judge.)

Mr. Key. The act was to apply to cases pending in the circuit court by presentment or indictment, otherwise it might be holden and no offences to try. The opinion of Judge Wilson [U. S. v. Hamilton] 3 Dall. [3 U. S.] 18, is entirely founded on its being a special session overleaping the stated session of the circuit court. It was certainly competent for this court, at the last stated session, to order all its unfinished criminal business to be continued to this special session. If the causes at the last term were ordered to be continued to this special session, and this court has not jurisdiction of them at this session, they are all discontinued. This court, formerly, (in 1821,) held a special session and tried indictments found at a preceding stated session. This court will not oust itself of its jurisdiction by a mere doubt.

Mr. Jones, contra. The act of 1789, § 5 (1 Stat. 73), giving the power to hold special sessions only applies to the time of holding them; the act of March 2d, 1793, § 3, to the place. Both should have the same construction. The process mentioned in the latter act, is the process only which is applicable to the cases to be tried at the special session. In Hamilton's Case, 3 Dall. [3 U. S.] 17, the supreme court say: "There is a provision, 'that all business depending for trial at any special court, shall at the close thereof, be considered as of course removed to

[1] [Reported by Hon. William Cranch, Chief Judge.]

the next stated term of the circuit court,' but there is no power given to remit to a special court, the business depending for trial before the stated circuit court." And in the case of The Insurgents, Id. 513, the opinion expressed in Hamilton's Case [supra] upon this point, is confirmed. These opinions are decisive on that point.

THE COURT (MORSELL, Circuit Judge, contra) was of opinion that we cannot, at this special session, try an indictment found at a stated court; and

THE COURT also (THRUSTON, Circuit Judge, contra) decided that it had not jurisdiction to issue the process in this case; the court having previously decided that it had no jurisdiction to try the cause.

The following is the opinion of CRANCH, Chief Judge, upon his discharge of Milburn upon the habeas corpus, referred to by counsel, in argument, before the supreme court, in Ex parte Milburn, 9 Pet. [34 U. S.] 708:

At November term, 1832, George Milburn was indicted for keeping a faro-bank, against the form of the statute, &c. Upon this indictment a capias ad respondendum was issued, during the term, returnable immediately, and was returned non est inventus. On the 29th of January, 1833, in vacation, a second writ of capias ad respondendum was issued, which did not, in any manner, refer to the former writ. This second writ was returnable to the fourth Monday in March, (the first day of March term,) and was returned, "cepi recognizance," meaning, thereby, that the defendant had been taken, and had given bail. The recognizance was taken in conformity with the provisions of the act of Maryland of October, 1780, c. 10, in the sum of $266⅔ (£100 Maryland currency.) By the second section of that act, the sheriff, upon any criminal writ for any offence less than felony, is required to take a bail-bond of the criminal and his surety, if judged necessary, in a sum not exceeding £100, conditioned that the criminal shall appear in court on the day of the return of the writ, attend the court from day to day, and not depart therefrom without leave of the court; and in case the criminal shall not be considered by the sheriff sufficient for that sum, and cannot find approved security, the sheriff is to take him before a magistrate, to be dealt with agreeably to the law then in force. The general practice of the sheriff, and of the marshal of this District, under this act, has been to take the party before a justice of the peace, who takes the recognizance in the sum of £100, considering the statute as a guide to his discretion.

Although the keeping of a faro-bank is, by the act of the 2d of March, 1831 [4 Stat. 448], made punishable by imprisonment and labor in the penitentiary, yet the nature of the offence is not thereby changed; it is still an offence less than felony; and is, therefore, within the provisions of the act of Maryland of October, 1780, c. 10. At the March term, 1833, to which the writ was returnable, the defendant was called, and, failing to appear, the recognizance was forfeited, and writs of scire facias issued thereupon against him and his sureties, returnable at November term, 1833; and a new capias ad respondendum, upon the same indictment, issued against the defendant during the term, returnable immediately, which was returned non est inventus. This writ did not, in any manner, refer to either of the former writs of capias. On the 1st of June, 1833, in vacation, a fourth writ of capias ad respondendum against the defendant was issued by order of the district attorney, upon the same indictment, returnable to the next November term. This writ, also, did not refer to any former writ. Upon this writ the defendant was taken, and being brought before me by habeas corpus in the vacation preceding the November term, was discharged, upon the ground that he was not lawfully taken by the last writ, as he had already been taken upon a former capias issued upon the same indictment, and had given what by the act of assembly was deemed sufficient bail; in whose custody he still remained. The marshal having returned this matter specially, a motion is now made by the attorney of the United States for this District, for a fifth writ of capias ad respondendum upon the same indictment; and the question is, whether such a writ can now issue in this case agreeably to the principles and usages of law. When the case was before me upon habeas corpus, I thought it could not; and will now state the reasons why I thought so.

In the first place. No such writ had ever been before issued in such a case in this court during the thirty-three years of its existence. I say this with great confidence, because, having had a seat upon this bench during the whole of that period, and having been seldom absent from court, if it had occurred, it could scarcely have escaped my notice; and lest my memory should have failed me, I have recently examined with great care all the docket-entries and minutes of every session of the court in relation to criminal causes from the year 1800 to the present time, with a view to this question. In every session I found entries of recognizances forfeited; but not a single case in which a new capias ad respondendum had been issued against the party who had been taken upon a former writ upon the same presentment or indictment, and had given bail; nor a single case in which a new capias has been issued upon the same indictment or presentment after the forfeiture of the recognizance given upon a former capias. The fact that no such subsequent capias had ever been issued, or even asked for, where cases were occurring at every session in which it would have been proper to issue it, if it could be lawfully issued, was to my

mind, almost irresistible evidence that it could not be lawfully issued.

In the second place. In all the books of entries and precedents of proceedings in criminal cases, which I have had it in my power to consult, (and I have looked into many,) I do not find the form of an entry of any order for a new capias ad respondendum, in a case of misdemeanor, after arrest and bail upon a former capias. It has been suggested, in answer to this objection, that every defendant who forfeited his recognizance, fled the country; and, therefore, it would have been in vain to issue a new capias. But that fact cannot be admitted. It is hardly possible that every person charged with misdemeanor and forfeiting his recognizance, both in England and in the United States, should have fled the country; and that the prosecutors should have been so certain of the fact, and so sure that the defendant would never return, as not to cause a second capias to be issued in the hope of taking the offender, and bringing him to trial.

3. I have not found in the books a single instance of a second recognizance for the same offence, forfeited, and estreated into the exchequer.

4. I have not found a single case, in the English or the American reports, in which a second capias ad respondendum, in a case of misdemeanor, was issued after bail had been given upon a former capias issued upon the same indictment. Nor have I found a case in which such a practice has been sanctioned or even alluded to by the court.

5. I have not found such a doctrine in any of the English or American elementary treatises upon criminal law, where, if such were the law or the practice, it would undoubtedly have been stated.

In arguing the case of Mary Wertz [unreported] at the special session in September last, upon the motion for a new capias, after forfeiture of her recognizance, the counsel for the United States cited several authorities, which deserve consideration.

The first was 1 Chit. Cr. Law, 59, 61. "But if a constable, having arrested a party under a warrant, suffer him to go at large, upon his promise to come again, and find sureties, it is doubted whether he can afterwards be arrested upon the same process; though it should seem that, as the public are interested in the offender's being brought to justice, there is no well-founded objection to such second arrest. And it is certain that if the escape be without the concurrence of the officer, the offender may be retaken as often as he flies, upon fresh suit, although he were out of view, or had reached another country or district." "But where the officer has voluntarily suffered the prisoner to escape, it is said, by some, that he can no more justify the retaking him than if he had never had him in custody before; because, by his own consent, he has admitted

that he has nothing more to do with him. It should seem, however, that the misconduct of the officer ought not to prevent a second arrest, in order that the offender may be brought to justice." It will be perceived, at once, that this authority refers only to the power of the officer to make a second arrest upon the same warrant, in case of escape, and is no authority for issuing a second capias ad respondendum, after arrest and bail upon the first.

The next authority cited was from the same volume, p. 100, where 'it is said: "In criminal cases, no justification being requisite, bail is absolute in the first instance. The magistrate may, however, examine them upon oath as to the sufficiency of their estate; and it is said that if he be deceived, he may require fresh sureties." This, however, is not the present case. It is not alleged that the estate of these sureties is insufficient. Chitty refers to 2 Hawk. P. C. c. 15, where the reason is given thus: "For that insufficient sureties are no sureties." The second arrest, therefore, could, in that case, be justified only because no bail had been given. It does not appear in Chitty or Hawkins, or in Hale's Summary, 96, or in Dalt. Just. c. 70, and 114, cited by Hawkins, whether a second arrest on the same process is intended, or an arrest upon new process. The former is most probable. For the language of Hawkins is, "And if a person who has power to take bail, be so far imposed upon as to suffer a prisoner to be bailed by insufficient persons, it is said that he, or any other person who hath power to bail him, may require the party to find better sureties, and to enter into a new recognizance with them, and may commit him on his refusal; for that insufficient sureties are no sureties." This language seems to imply that the party is already arrested and before the magistrate, which may be by a new arrest on the same warrant, as in cases of escape. And in the case of Rex v. Salter, 2 Chit. 109, it was decided, that "after a defendant has been admitted to bail on a criminal charge, the court will not increase the bail on an affidavit disclosing facts in aggravation of the original offence, and rendering the enormity of it greater than had appeared to the court, when they granted the rule for the allowance of bail." In that case, Mr. Justice Bailey said, that "he doubted how the defendants, having been once arrested, could be arrested again, which, in fact, must be done to compel them to give additional bail." The case put by Chitty and Hawkins is one in which, in effect, no bail was given. In the present case, sufficient bail has been given, and the party is still in their custody.

The next authority cited is 1 Chit. 102. "The admitting bail, where it ought not to be taken," "is liable to be visited as a negligent escape at common law;" that is, as I understand it, the sheriff or magistrate who takes the bail is liable to be punished as for

a negligent escape. But it does not follow that the sheriff or magistrate has a right to a new writ to arrest the party. The utmost that the law would allow would be, that the party should be taken again by the same writ, as in other cases of escape. But that is not like the present case, in which the bail was properly taken, and is in full force.

The next authority cited is 1 Chit. 338. "Whenever the king grants an authority of oyer and terminer. the power to issue process is incidentally given; for, as there can be no inquiry respecting offences without the presence of the party, wherever the power is intrusted of determining the former, there must also be authority to compel the latter." If the defendant, not being in actual custody, voluntarily appear in court, it is discretionary, and not obligatory, in the court. to detain him; but they may leave him to be taken by the ordinary legal process. The correctness of these principles cannot be questioned; but it does not follow that the defendant may be arrested upon a second capias ad respondendum, after having given sufficient bail upon the first writ issued upon the same indictment for the same misdemeanor.

The next authority cited is 1 Chit. 342. "The practice in issuing the bench-warrants is, that where the parties are not under recognizance, the prosecutor has a right, during the assizes or sessions, to this process against them, to bring them immediately into court to answer. But when the parties are under recognizance, no process can be had against them during the assizes or sessions, because it is looked upon in law as but one day, and the defendant has the whole to make his appearance. In such case, however, the prosecutor may, if the defendant has not appeared, bespeak a bench-warrant during the assizes or sessions, which will be issued at the close thereof. If the assizes or sessions are over, and no bench-warrant has been previously applied for, then a warrant from a single judge, or justice of the peace, may be obtained; and in order to make the application effectual, it must be grounded upon the certificate of the clerk of assize, or the clerk of the peace, that the indictment has been found against the defendant, upon which the warrant will be granted." It is evident that the recognizance here spoken of is the recognizance taken by a magistrate out of court, before presentment or indictment, in which case the defendant is charged only upon suspicion, the magistrate having no power to pronounce authoritatively upon the truth of the allegation. But a presentment or indictment affirms the fact positively and precisely. It may or may not be the same offence for which the defendant was bound over, or it may be of a more aggravated character; it is not connected by the record, with the previous recognizance: it therefore becomes a new cause of arrest, and has always been

so considered by this court; and a capias ad respondendum issues, of course, returnable to the next term, unless specially ordered to be returnable immediately, which is often done in cases of an aggravated nature; but this does not show that a second capias ad respondendum can be properly issued against a defendant who has been arrested and given sufficient bail, on a previous capias, upon the same indictment in a case of misdemeanor.

The next authority cited is 1 Chit. 695. "When any corporal punishment is to be inflicted on the defendant, it is absolutely necessary that he should be personally before the court at the time of pronouncing the sentence. But where a pecuniary penalty only can be awarded, judgment may be given in his absence, if a clerk in court will undertake for the fine, and the court think fit to dispense with his attendance. And one reason of this distinction is, that a capias pro fine may be issued to take him, in case he refuse to pay the sum imposed on him, though it is said that there can be no process after judgment to bring him in, in order to set him in the pillory, or to visit him with any corporal infliction;" "and, therefore, where the judgment may probably be of a corporal nature, or the offence is of a gross and public nature, the court, who may, in all cases, act, in this respect, according to their discretion, will insist on the appearance of the offender, even though a clerk assents to answer for the fine." Such, also, has been the doctrine and the practice of this court; and in cases of misdemeanor the court has often, in its discretion, refused to suffer the cause to be tried unless the defendant be personally present; and if the defendant, when called, did not appear, has proceeded to forfeit his recognizance. And where the defendants, in such cases, have been tried and convicted in their absence, the court has often ordered writs of capias to be issued ad audiendum judicium; but this does not show that the court can or ought to issue a second capias ad respondendum after sufficient bail given upon the first.

These are all the authorities, from the books, cited on the part of the prosecution in Mary Wertz's Case; but there are others which seem more strongly to countenance the practice contended for by the attorney of the United States than those which were cited; and I shall proceed to consider them. It is said in Highm. Bail, 200: "If the offenders appear not upon their recognizances the first day, the default is to be recorded, and the recognizances to be forfeited; nevertheless, processes, or warrants, as the case shall require, to go out against them and their bail; so likewise as to those who are bound to give evidence; that, if possible, the business be not deferred to another sessions; in which time, commonly, the prosecutors and witnesses are taken off, and the matter compounded." Kel. J. 2. The above is a

literal copy of one of the rules of practice "to be observed by the justices of the peace and others, at sessions in the Old Bailey, for London and Middlesex, in the 16th Car. II., by" three judges of the king's bench, and two judges of the common pleas, "and signed by them, and read in open court, and ordered to be filed by the clerk, that all justices might take copies by them if they please; for that they shall not for the future pretend ignorance of their duty." The first rule is, "that all recognizances and bailments taken by any justice of the peace be certified into the court the first day of every session before noon," &c. The second, (as above cited by Highmore,) "If the offenders appear not upon their recognizances the first day," &c. So that it is evident that the recognizances mentioned in the rule cited by Highmore are those which were taken by justices out of court, and before presentment or indictment; and that the processes which were to issue against the offenders and their bail, were to be like those against persons bound to give evidence; that is, process founded upon their recognizances. And no doubt Highmore alludes to the like recognizances taken before presentment or indictment, when, in page 202, he says: "If a principal do not appear, and the recognizance be forfeited and paid by the bail, yet the principal shall remain open and liable to the law, whenever he can be taken; for the penalty in the recognizance is no other than as a bond to compel the bail to a due observance thereof, and has no connection with the principal. They could not sue him thereon for money paid to his use, or on his account, for it was paid on their own account, and for their own neglect; but having paid it, they are wholly exonerated, though the offender remains liable for his offence." Highmore cites no authority, and is none himself. He has certainly misunderstood the law in supposing that the bail cannot sue the principal for the money paid on the recognizance. See Fisher v. Fallows, 5 Esp. 171.

2 Hawk. P. C. c. 27, § 29. "It seems that if a defendant appear to an indictment, or appeal of felony, and afterwards, before issue joined, make an escape, whether from his bail, or from actual prison, the common capias, alias, and pluries, &c., shall be awarded against him, unless there had been an exigent before, in which case a new exigent shall be immediately awarded; and if a defendant, against whom no exigent had been before awarded, make such default, after issue joined, and an inquest awarded to try it, it seems that a capias, &c., shall be awarded against him ad audiendum juratam, &c.; and, as I take it, the same day on which the capias is returnable, shall be given to the inquest; for it seems agreed that the inquest shall never be taken by default in the case of felony, as it may for an inferior crime." Hawkins refers to Hale's Summary, 211; 2 Hale, P. C. 201, 202; 16 Assizes,

pl. 13; 26 Assizes, pl. 51; Fitz. Exigent, 10; Staundf. P. C. 70, letters E and F; 2 Hale, P. C. 224; Brooke, Abr. tit. "Waiver de Choses," 39. Hale, in his Summary (page 211), speaking of appeal in felony, says: "If the defendant comes in by capias, and, after appearance, make default, a new capias; if upon exigent, a new exigent, and upon second appearance shall plead de novo, for the first inquest is sine die." He cites no authority. Hawkins, in his note (e) to that part of the text which says, that if a felon escape from his bail before appearance, a new capias shall be awarded, says, but this is made a quære. Cromp. & F. 150b. I have not been able to find Crompton, (I suppose the book referred to is Fitzherbert's Justice, enlarged by Richard Crompton, 4to. 1617,) and therefore cannot say upon what ground the doubt of Crompton or Fitzherbert arose. I have, however, examined the authorities cited by Hawkins, and find that the cases referred to were not cases of bail, but of mainprise; which differ in this essential point, that bail is custody, but mainprise is not. Thus Lord Hale says, in his Summary (page 99, 5th Ed.): "Mainpernors are only surety; but bail is custody; and, therefore, the bail may seize the prisoner if they doubt he will fly, and detain him, and bring him before a justice; and the justice ought to commit the prisoner in discharge of the bail; or put him to find new sureties." And Lord Coke, in his 4th Institute, folio 178, says, that the entry is traditur in ballium; that the word "ballium" is "from the French noun 'bail,' that signifieth a guardian, keeper, or gaoler," and that, in the customs of Normandy, "bailment is called a living prison." In the Year-Book of 33 Hen. III., Fitz. Mainprise, 12, it is said: "By Shard, there is a diversity between bail and mainprise; for the entry of bail is, that such an one traditur in ballium, in which case they are his keepers; and if they suffer him to escape, they shall answer for it." In Y. B. Edw. III., Fitz. Mainprise, 13, it is said, "They would justify; but it seems they could not; for the entry is that such an one and such an one have mainprised (manuceperunt.) But where he is delivered to them in bail, they may well imprison him." Per Wilby, in Debt, &c. In 4 Inst. 170, Lord Coke says: "In the next place we are to speak of mainprise,—manucaptio,—which deriveth itself and signifieth a taking into the hand. Every bail is mainprise, (for those that are bail take the person bailed into their hands and custody,) but every mainprise is not a bail; because no man is bailed but he that is arrested, or is in prison; for he that is not in custody or in prison cannot be delivered out; as before it appeareth; but a man may be mainperned that never was in prison; and therefore mainprise is more large than bail." And in the same page he says, "The entry is, Et super hoc prædictus a dimittitur" (is discharged) "per manucap. E. D. and E. F.

qui cum manuceperunt ad habendum corpus ejus hic ad præfatum terminum et sic de die in diem &c., quousque," &c. "And this is properly in the entry said by mainprise and no bail," &c. "Now, forasmuch as every bail is a mainprise, (as hath been said,) bail is oftentimes termed in our books by the name of mainprise, as before it hath partly appeared, and as it appeareth in the writ de manucaptione, and in divers acts of parliament." "Lastly there is a manifest diversity between de die in diem and bail. For he that is by mainprise de die in diem, no bill can be maintainable against him; otherwise it is against him that is by bail; per cursum curiæ." In 2 Hale, P. C. 124, Lord Hale says: "Bail and mainprise are used promiscuously oftentimes for the same thing," "but yet in a proper legal sense they differ." "He that is delivered per manucaptionem only, is out of custody; but he that is bailed is, in supposition of law, still in custody; and the parties that take him to bail are in law his keepers, and may reseize him to bring him in; and, therefore, if a man be let to mainprise, suppose in the king's bench. an appeal, or other suit, cannot be brought against him as in custodia marescalli; but if he be let to bail, he is, in supposition of law, still in .custodia marescalli. 3 Edw. III.; Mainprise, 12; 36 Edw. III.; Id. 13; 32 Hen. IV. 6a; Protection, 13; 21 Hen. VII. 20b, per Fineaux, and 9 Edw. IV. 2a." "And in p. 125, he says, the entry on the record in the one case is deliberatur per manucaptionem, and in the other case traditur in ballium." In page 126, he gives the proper form of the recognizance of bail, and in page 127, he says: "The advantage of this kind of bail is this, that it is not only a recognizance in a sum certain, but also a real bail, and they are his keepers, and may be punished by fine beyond the sum mentioned in the recognizance, if there be cause, and may reseize the prisoner, if they doubt his escape, and bring him before the justice, or the court, and he shall be committed, and so the bail be discharged of his recognizance." 36 Edw. III. Mainprise, 13; 23 Edw. III. Mainprise, 23; Cromp. & F. F. 157 (a). So in his chapter touching justices of gaol-delivery (2 Hale, P. C. c. 5, p. 35), who have only a commission to deliver the gaol of the prisoners therein being, he says: "If a person be let to bail, yet he is, in law, in prison. and his bail are his keepers. and therefore the justices of gaol-delivery may take an indictment against him as well as if he were actually in gaol; but he that is let to mainprise is not in custody." 21 Hen. VII. 33 (a); 9 Edw. IV. 2a; 39 Hen. VI. 27 (b), in one case the entry is traditur in ballium, in the other deliberatur per manucaptionem." In p. 199, of the same book, he says, "Justices of gaol-delivery regularly cannot issue a capias or exigent, because their commission is to deliver the gaol de prisonibus in eâ existentibus, so that those whom they have to do

with are always intended in custody already." So in his chapter concerning certain treasons, (1 Hale, P. C. c. 25, p. 325,) in speaking of that clause of the statute of 13 Edw. c. 1, which exempts from the penalties of the act those who should give alms in money, meat, apparel, &c., to any offender, "during the time of his imprisonment," he says, "but, nota, it extends no further than during the time of his imprisonment; yet the law is all one if he be under bail, for he is in custodia still, for the bail are, in law, his keepers; and he that is delivered to bail in the king's bench is, nevertheless, said to be in custodie marescalli." And in page 620, he says: "If a felon be in prison, he that relieves him with necessary meat, drink, or clothes, for the sustentation of life, is not accessary. So if he be bailed out till the next sessions, &c., it is lawful to relieve and maintain him; for he is quodammodo in custody, and is under a certainty of coming to his trial." Cromp. & F. 42; 6 Dalt. Just. p. 286 (or 530). See, also, the following cases in the Year-Books, showing the distinction between bail and mainprise, and that the former is custody, and the latter is not. Pasch. 9 Edw. IV. 4; 21 Hen. VII. 33; 39 Hen. VI. 27, 6, pl. 39; 32 Hen. VI. f, 1, pl. 3; 9 Edw. IV. 2; 22 Hen. VI. 59, 60; 21 Hen. VII. 20. See, also, Dalt. Sheriff, 356, c. xcvi., and Gorge & Lane's Case, Godb. 339; and 1 Chit. Cr. Law, 104. See, also, Gorsuch v. Holmes, 4 Har. & McH. 4; Osborn v. Jones, Id. 5, note a.

S. Chase, C. J.: "If, on suing the bail-bond, the prisoner is out of custody of the sheriff, I conceive he can never again be in his custody, in virtue of the mesne process in that action; and the sheriff would be liable to false imprisonment if he were to take him against his consent, and I apprehend that against his consent he cannot be surrendered to the sheriff by his bail, but they may keep him, and surrender him in court. There is a difference between manucaptors, which are that the party shall appear at the day, and bail. 3 Vin. Abr. 'Bail,' 493, pl. 11, cites Godb. 339."

These authorities seem clearly to establish the doctrine, that bail is custody, and that mainprise is not. Hawkins refers to Hale, and Hale cites the same cases which Hawkins has noted in the margin of his 2d book, . c. 27, § 19, to show that if a felon escape from his bail, a capias ad respondendum or ad audiendum juratam, may be issued, according as he had pleaded or not before his default. If those cases are cases of mainprise, and not of bail, and if bail be custody, and mainprise be not, then the cases cited do not support the doctrine for which they were cited, and if they did, yet the doctrine itself is only applicable to a case of felony; but the present case is one of misdemeanor. The only cases cited to support the doctrine, are 16 Assiz. 13; 26 Assiz. 51; and T. 19, Edw. III.; Fitz. Exigent, 10, which seems

to be the same case as 16 Assiz. 13. The case in 16 Assiz. 13, is thus stated by Fitzherbert, tit. "Corone," &c., 173: "In appeal of rape, the defendant pleaded not guilty, and was let to mainprise to attend the inquest and judgment, and afterwards came not: whereupon capias was awarded against him, and alias and pluries now returned, and he came not. Scott awarded an exigent, and said; that if he rendered himself pending the exigent, he would try to make the inquest come again, for it is now without day by the exigent issued upon his first plea; and so it was done, and note that he would not take the inquest by default, for it is a case of felony." The case in T. 19, Edw. III., Fitz. Exigent, pl. 10, is thus stated by Fitzherbert: "Appeal of rape. The defendant pleaded not guilty, and was let to mainprise to attend the inquest; and afterwards came not; whereupon capias was awarded against him to hear the inquest, and also an alias and pluries now returned, and he came not. Scott: If we award more capias, this process is infinite; and we cannot take the inquest by default in this case, because the judgment is of life and member; and if the exigent issue, the inquest will be without day, and pending the exigent he may render himself, and plead de novo, which would be great delay. Th. (Thorpe.) This suit is but a trespass at common law, wherefore try (asseies) to take the inquest by his default. Scott: Here we can do nothing but award the exigent, and if he do not (qu?) render himself (s'il ne rend) pending the exigent, we will try to make the inquest come upon his plea pleaded," "et ita factum est." The case in 26 Assiz. 51, Fitz. Corone, &c. pl. 196, was this: "A woman brought appeal in the K. B. of the death of her husband. The defendant rendered himself pending the exigent against him, and pleaded not guilty, &c., at which day search was made by the coroners of the place, and he was not found; and by inquest it was found that he had escaped without the will of the marshal. Shard demanded of the justices of the common bench whether the inquest should be taken, &c., or whether a capias, &c., or an exigent de novo should be granted; and by the award of them all, the exigent de novo was awarded, whereby it was commanded that the sheriff should take him, if, &c., ad audiendum judicium; and if not, &c., that he should be demanded, &c. And note, that the same defendant was taken at the suit of the wife of another, &c., and, notwithstanding, by the advice of all the justices and the council, the marshal was charged but for an escape, and it was again well debated."

The two first of these cases, if they are not the same, are exactly alike in principle, and are cases of mainprise, which is not custody; so that the defendant was absolutely at large, and not even bound by recognizance to appear; for it does not appear, by the

forms of entry of mainprise, that the principal enters into any obligation to appear; (4 Inst. 179, 180; Co. Ent. 51, c. 52 b, &c.,) there could be no reason, therefore, why a capias should not issue against the defendant upon his failing to appear at the day. But when a defendant is delivered to bail, he is still in law as much in custody as if he had remained in the custody of the sheriff. The sheriff was but his keeper, and so are his bail. A capias cannot regularly issue against a person who appears by the record to be in custody, 30 Assiz. 23. "If the return be cepi corpus, no new exigent, because in custody of record." Staundf. P. C., folio 70, letters E and F, (Ed. 1588,) after stating the two cases from Fitz. Corone, 196, and Exigent 10, (as above,) says: "And see 30 in the book of assize, 23, where, in an appeal of death, the sheriff returned cepi corpus, and at the day had not the body, for which he was amerced, and was commanded to have the body, and so two or three times, and nothing was done; wherefore the plaintiff prayed an exigent, for he said the prisoner had escaped as the sheriff was bringing him to gaol, and the justices answered that they would not award the exigent against one who appeared to them to be in prison; but they would command the sheriff to have the body, and if he return this escape, then the plaintiff shall have his prayer, and not otherwise." The case from Fitz. Corone, 196, was the case of an escape of the defendant after rendering himself upon the exigent, and a new exigent was awarded; but not till the escape was found by inquest. So that it seems to be settled, that, after a return of "cepi," the court will not award a new capias unless it appear of record that the defendant has escaped. The mere refusal of the sheriff to bring in the body is not evidence of an escape upon which the court can act; so the refusal of bail to surrender their principal is not such evidence of his escape as to justify the court in issuing a new capias. For, by the common law, the bail were as liable to be amerced as the sheriff, for not bringing in the body at the day, and no more summary process was given to bring in the body of a defendant who was bailed, than to bring in the body of a defendant who appeared by the record to be in the custody of the sheriff. The custody of the bail is, in law, substituted for that of the sheriff, and they have the same power over the defendant to keep him and bring him into court. They are substituted for the common gaol. In the language of the customs of Normandy, they are "a living prison." After a return of "cepi," there can be no new capias, but in the case of escape appearing of record; and there must be an entry on the roll sufficient to warrant the writ. There must be an "ideo praeceptum est." Dyer, 211b, Officium Clerici Pacis, 37.

The cases we have been considering were cases of felony, and they show on their face that the doctrine for which they were cited

is only applicable to such cases, and not to cases of misdemeanor. There is no case to be found, it is believed, in the books of reports, or of entries, or in the elementary treatises, in which a second capias ad respondendum was issued upon the same indictment, in a case of misdemeanor, while it appeared of record that the defendant was in custody either of the sheriff or of the bail. There is a great difference in the proceedings in regard to felony and misdemeanor. In felony the first process is capias, then an alias capias, and then an exigent and outlawry. In misdemeanor, it is first a venire facias, then, if the defendant has lands, distress infinite; if he has no lands, and the sheriff returns nihil upon the distringas, then a capias, alias, and pluries, and then an exigent and outlawry. The common law was very careful of personal liberty. By that law all offences were bailable. 2 Inst. 189. The exceptions have been introduced by various statutes; and the reason why bail is denied in cases of murder, &c., is that the offence is so enormous that the escape of the offender can never be compensated to the public by the bail being subjected to a pecuniary penalty. Blackstone (Comm. bk. 4, c. 22,) says: "This commitment being only for safe custody, wherever bail will answer the same intention, it ought to be taken, as in most of the inferior crimes: but in felonies, and other offences of a capital nature, no bail can be a security equivalent to the actual custody of the person. For what is there that a man may not be induced to forfeit to save his own life? and what satisfaction or indemnity is it, to the public, to seize the effects of them who have bailed a murderer, if the murderer himself have escaped with impunity?" And again, he says: "But where the imprisonment is only for safe custody before the conviction, and not for punishment afterwards, in such cases bail is ousted or taken away, wherever the offence is of a very enormous nature; for then the public is entitled to demand nothing less than the highest security that can be given, namely, the body of the accused, in order to insure that justice may be done upon him, if guilty." And again, after designating the cases which are not bailable, and observing that the court of king's bench can bail in all cases, he says: "And herein the wisdom of the law is very manifest. To allow bail to be taken commonly, for such enormous crimes, would greatly tend to elude the public justice; and yet there are cases, though they rarely happen, in which it would be hard and unjust to confine a man in prison, though accused even of the greatest offence. The law has, therefore, provided one court, and only one, which has a discretionary power of bailing in any case."

The inference from these passages is, that, in cases of "inferior crimes," bail "will answer the same intention" as "commitment," and is "equivalent to the actual custody of the person," or, at least, that such was the

opinion of the legislature when they left those inferior cases liable to bail as at common law, deeming it better, for the good of society, that these offenders should have the chance of escape, by forfeiting their recognizances, than that they should be detained in actual prison until trial. Such also seems to have been the understanding of the legislature of Maryland when they passed the act of 1780, c. 10, "to enable the sheriffs to take bail-bonds in certain cases," which enacts that it shall be lawful for sheriffs to take bonds of all persons taken by them on any criminal writ, for any offence less than felony, with security if they shall think it necessary; and that they shall be obliged to take such bail-bond, in a sum not exceeding £100, conditioned that the said criminal shall appear in court on the day the writ is returnable, attend the court from day to day, and not depart therefrom without the leave of the said court; and in case the criminal shall not be considered by the sheriff sufficient for the sum aforesaid, and cannot find sufficient security, the sheriff "shall take him before a magistrate, to be dealt with agreeably to the law now in force;" and where there is a failure of performance of the condition of the bond, a writ shall issue for the recovery of the penalty, &c.; and, if the sheriff shall fail to take such bond, to be approved by the court, or to take the criminal before a magistrate to be dealt with according to law, he shall be liable to be proceeded against in the same manner as he would have been on his default in not bringing in the party according to his return, if that act had not been made. This shows that the legislature supposed that a bond in the penalty of £100 was sufficient security in all cases less than felony; and instead of directing a new criminal writ to be issued against the defendant upon his default in not appearing, they have expressly directed that the writ shall be issued for the recovery of the penalty. And in the whole statute law of Maryland, including the English statutes, "introduced, used, and practised by the courts of law or equity" of that state, there is not a clause or a word which alludes to a second capias ad respondendum upon an indictment for misdemeanor, after arrest and bail upon a previous capias issued upon the same indictment. The act of assembly of October, 1780, c. 10, obliges the sheriff to take a bail bond in all cases less than felony, if tendered, and the security be sufficient. If a defendant, who has been arrested and given bail, is arrested again on a second writ, he is again entitled to bail; and so toties quoties; and it may be that he can never be brought to trial. So also if he should remove out of the jurisdiction of the court into another state or government, he could not be brought to trial, unless in case of escape and demand from the executive, &c. These chances were, no doubt, calculated by the parliament of England and the legislature of Maryland, when they were considering what cases should be bailable, and

what should not. It is believed that at the time of the separation of this part of the District of Columbia from the state of Maryland, it was not the practice in that state to issue a second capias ad respondendum upon an indictment for misdemeanor, after arrest and bail upon a former capias issued upon the same indictment. No case of that kind has been cited. Mr. Mason, who was the first attorney of the United States for this district, had been long an eminent practitioner in the courts of that state, and if such had been the practice there, he would, undoubtedly, have introduced it here; but during the whole time he held the office here, he never issued, nor applied for, a second capias in such a case, although, at every term there were cases of forfeited recognizances; and we all know that he was remarkably faithful and attentive to his duty, and accurate in all his forms of proceeding. Judge Kilty, also, who was the first chief judge of this district, and who was afterwards chancellor of Maryland, was well conversant with the practice of the courts of that state, and had just revised and published a valuable edition of the laws of Maryland, yet he never suggested an idea of such a practice; and, until the present, no such case has occurred in this court. It is stated, however, upon very respectable authority, that such is the practice in some of the courts in Maryland.

The judge of the Baltimore criminal court (a court erected since the separation of this part of the district from Maryland) states that the practice of his court is, "for the prosecutor, at every term where the person charged does not attend, to call him on his recognizance, and, if he does not answer thereto, to call his security to bring in his principal. If the latter also makes default, the court enters judgment for the penalty, and execution is issued thereon against the parties, and a bench warrant on the presentment or indictment, as the case may be, is, as a matter of course, issued against the offender to bring him in. If he is taken, or his security brings him in, the penalty is generally released on payment of costs attending the proceedings to recover it." And, in reply to a letter from the attorney of the United States for this district, he says, "that our courts make no such discriminations as stated in your letter between recognizances taken before or after presentment and indictment;" "and if the party fails to give his personal appearance, our uniform practice is, and has always been since the days of Judges Chase and Martin, to call him on his recognizance, enter the forfeiture, and issue execution thereon, and renew the capias or bench warrant against the principal." "It is also our practice, when the principal is brought into court and stands committed, to release or remit the forfeited recognizance if the money has not been paid, on payment of the costs attending the forfeiture." He also says, "The judges of the county court, and some of the most experienced practition-

ers to whom I showed your letter, entirely concur with me in the foregoing, especially in that portion of it relating to the recovery of the penalty and renewing the process against the delinquent, notwithstanding the payment of the money." The attorney-general of Maryland (Josiah Bayly, Esq.), in a letter to the attorney of the United States for this District, dated Cambridge, Md., October 7, 1833, says: "The practice of the courts in this judicial district for the last forty years has been, in all cases of presentments or indictments, where the party charged has been bound in recognizance, to issue a warrant in the nature of a capias, returnable to the next term; or, in certain cases where the party can be taken during the term, or may elude the process of the court, a bench warrant, returnable immediately; and, if the party is arrested and brought up, the court compel a speedy trial, unless legal grounds exist for the continuance, and, in that case, they take recognizance with sufficient security, or commit. If the party has been bound to appear to answer a criminal charge before the finding a presentment or indictment, and such presentment or indictment is found at the term to which he is bound to appear, the court order him to be called, and if he does not appear, direct his recognizance to be forfeited, and a warrant in the nature of a capias to be issued, returnable to the next term. Upon the return of those warrants 'cepi,' a rule is laid on the sheriff to bring the body in court by a certain day during the term, and, on failure to comply with the rule, the sheriff is amerced in a sum sufficient to enforce obedience, or inflict punishment for neglect of duty; and if the party can be found, a warrant in nature of a capias is renewed, or a bench warrant, as the nature of the case may require." After giving his opinion upon the construction of the act of October, 1780, c. 10, and some other points, he says: "In all cases where the sheriff brings the party into court under the rule laid for that purpose, the court either take the party's recognizance with security, or commit, if he be not ready for trial. If the party does not appear, according to the condition of the recognizance, it is forfeited, and a warrant in the nature of a capias renewed by order of the court, or the attorney, to answer the charge in the presentment or indictment in the same manner, and the same proceedings are had, as if he had never recognized. Similar proceedings are adopted, if the party escape after commitment, although the sheriff may be punished for suffering the escape." A gentleman of the bar (Mr. Thomas F. Bowie) in Upper Marlborough, in a letter dated 4th October, 1833, to the attorney of this district, says: "I have taken some pains to ascertain the practice of this court in reference to the question proposed in your letter, and the practice has been, whenever the sheriff has arrested an individual upon criminal process issuing on a presentment or indictment, and taken a bail-bond, if the per-

son arrested does not appear, new process invariably issues to bring him in, and he is tried under the same indictment." Mr. O. H. Williams, who, I suppose is clerk of Washington county, Maryland, states that he has not been able to find, and does not recollect, a case in that county, of a new writ issuing on a presentment or indictment where the first writ was returned cepi, the party recognized, and the recognizance forfeited; but the practice in such case has been to enter the case on the criminal docket "discontinued." Mr. Schley, the clerk of Frederick county, Maryland, does not recollect any particular case in point. It is stated by the counsel for the defendant, that it appeared, upon inquiry of the clerks of Charles and St. Mary's counties, in Maryland, that there was no such practice in their courts. The practice in Maryland, therefore, is not even now universal or well settled, and no case has been shown by which it is established. If there be such a practice in any of the courts, it may have been caused by not distinguishing between the recognizances taken by justices of the peace before presentment, and those taken by way of bail upon a criminal writ issued upon a presentment or indictment. The presentment or indictment is a new cause of bail, unconnected, it may be, in fact, and certainly unconnected by the record, with the previous arrest by the magistrate's warrant; but a second writ upon the same indictment, is for the same cause of arrest, and if the defendant has once given sufficient bail, and is, in law, in custody, it seems to me contrary to all the analogies and rules of the common law to require him to give bail again. In cases of felony, it may, perhaps, be done, because felony is not, in general, bailable, and the party has no absolute right to be bailed; but even in cases of felony I find no positive law, nor any decided case to justify it.

As, therefore, it had never been done by this court in a case of misdemeanor; as there was no order of the court to justify it; as I could find no form of such an entry in any of the books of entries; as I could find no case reported in which it was ever allowed, or in which a second recognizance for the same offence, has ever been estreated into the exchequer; as there is no such rule stated in any of the elementary treatises upon the criminal law; and as it seemed to me to be contrary to the analogies and the spirit of the common law,—I cannot but think myself to have been fully justified in discharging the defendant upon the habeas corpus. If, however, I have erred in my view of the law, that error may have arisen from my desire, upon all occasions, to support those principles of the common law which our ancestors claimed as their birthright, and which are the surest guards of personal liberty; and no one will rejoice more than myself to see my errors corrected.